# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SHYRON L. WHITE**                                          **CIVIL ACTION**

**VERSUS**                                                   **NO. 25-498-BAJ-RLB**

**DAIRY QUEEN, INC., ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings of fact, conclusions of law, and recommendations within fourteen (14) days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 2, 2026.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**SHYRON L. WHITE**                                              **CIVIL ACTION**

**VERSUS**                                                       **NO. 25-498-BAJ-RLB**

**DAIRY QUEEN, INC., ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

Before the Court is American Dairy Queen Corporation's ("ADQ") Motion to Dismiss Pursuant to Rule 12(b)(6). (R. Doc. 22). The motion is opposed. (R. Doc. 24). ADQ filed a Reply. (R. Doc. 27).

Also before the Court is Defendant MMPR Denham Springs Hospitality, LLC's ("MMPR") Motion to Dismiss Pursuant to Rule 12(b)(6). (R. Doc. 23). The motion is opposed. (R. Doc. 25). MMPR filed a Reply. (R. Doc. 28).

Also before the Court are Plaintiff's Motions for Leave to File Amended Complaint Pursuant to Federal Rules of Civil Procedure 15(a). (R. Docs. 32, 33). The motions are opposed. (R. Doc. 34).

## I.    Background

Shyron L. White ("Plaintiff"), who is proceeding *pro se* and *in forma pauperis* ("IFP"), commenced this action on June 8, 2025. (R. Doc. 1).

Plaintiff alleges that he was discriminated against because of his sexual orientation and that he was retaliated against by management of the Dairy Queen Grill & Chill, a fast food

---

[1] This matter began as a direct assignment to the magistrate judge, with each party having an option to opt-out of that direct assignment. Since all named parties have not appeared, however, the time within which to opt-out has not yet run and therefore any consent is not yet complete. Accordingly, because the relief sought in the instant motions is dispositive, this matter was assigned to a district judge for final disposition.

restaurant in Denham Springs, Louisiana, for complaining of his treatment to the corporate

office. (R. Doc. 1).

In his Amended Charge of Discrimination submitted to the U.S. Equal Employment

Opportunity Commission ("EEOC") on February 5, 2025, Plaintiff identified the following as his

employer: "Dairy Queen, Inc. (IDQ) and American Dairy Queen Corporation (ADQ) DBA Dairy

Queen Grill & Chill." (R. Doc. 1-2 at 1). Plaintiff raised the following complaints with respect to

alleged discrimination based on sex (sexual orientation) and retaliatory discharge:

> I began my employment with the above listed Respondent in September 2023
> most recently as a Shift Leader. Beginning March 2024 until my discharge on
> October 19, 2024, I was subjected to harassment and retaliation by Sharrita
> Broussard (Store Manager) (f) and Marlayshia Bias (Crew Member) (f). The
> company employs over 500 persons.
>
> I have been called disparaging names by Sharrita consisting of big back" and
> "Michael Jackson". Sharrita also mocked me and asked me if I was gay when I
> was walking through the back entrance. Multiple times Marlayshia screamed at
> me and referenced me as a slave. I was promised a raise by Sharrita and Jamie
> Talcott (DM)(f) after I passed my test. I never received the raise. In September
> 2024 my work hours were dropped to part time by Sharrita. In October 2024, I
> submitted a complaint to the corporate office against Sharrita's bullying,
> manipulation unprofessionalism and unfair treatment. Nothing was done. On
> October 19, 2024, Sharrita stated "Fu@k ya'll" after me and another co-worker
> delayed passing her an order of toast. Sharrita also stated that no one likes
> working with me. On October 19, 2024, after a discussion, she began to raise her
> voice and asked me for the store key. I was falsely accused of being on drugs. On
> October 20th I was informed that I was not on the schedule, and I was discharged.
>
> I believe that I have been discriminated against based on my sex (sexual
> orientation) and retaliated against in violation of Title VII of the Civil Rights Act
> of 1964 as amended in that after my discharge I was informed that Sharitta and
> Jaime had everyone to write a statement. Jamie stood over another crew member,
> and it seemed as if she was directing his hand on what to write.

(R. Doc. 1-2 at 1-2).

On May 22, 2025, the EEOC issued a Dismissal and Notice of Rights letter, providing

that the "EEOC have exhausted all avenues for obtaining a contract person for Respondent and a

position statement," and informing Plaintiff of his right to sue. (R. Doc 1-2 at 5-6). MMPR was sent, and received, a copy of this right to sue letter. (*See* R. Doc. 1-2 at 6).

In the Complaint, Plaintiff names four defendants: "Dairy Queen, Inc. (IDQ); American Dairy Queen Corporation (ADQ); DBA Dairy Queen Grill & Chill; and MMPR Dairy Queen Denham Springs." (R. Doc. 1 at 2).

Plaintiff alleges that in September 2024, his manager Sharitta Brousard ("Brousard"), asked Plaintiff in front of his coworkers, "Shyron, are you gay?" (R. Doc. 1 at 7). Plaintiff, who states he was in a 4-year long heterosexual relationship at the time of the question, claims that he was humiliated by the question and that this incident caused him to spiral into depression, culminating in a suicide attempt in October of 2024. (R. Doc. 1 at 7). This incident is the only allegation of discrimination based on sexual orientation in Plaintiff's Complaint.

Plaintiff alleges that he submitted a "corporate complaint" in October 16-17 of 2024, but does not submit a copy of this communication or identify the entity to which it was addressed. (R. Doc. 1 at 7). In his EEOC Charge, Plaintiff asserts that he filed this complaint with Dairy Queen's corporate office regarding Brousard's "bullying, manipulation[,] unprofessionalism[,] and unfair treatment." (R. Doc. 1-2 at 1). Plaintiff does not allege that in this complaint he specified that Brousard's actions had anything to do with his sexual orientation.

Plaintiff further alleges that on October 19, 2024, Brousard, during a conversation regarding Plaintiff's performance, stated, "[y]ou must not know how these streets are[,]" which Plaintiff understood as a threat on his life. (R. Doc. 1 at 7). Plaintiff also claims that Brousard accused him of being on drugs, in spite of the fact that Plaintiff had been sober for years and was regularly drug tested. (R. Doc. 1 at 7). Plaintiff believes that this altercation was instigated by

4

Brousard in retaliation for Plaintiff's filing of a corporate complaint. (R. Doc. 1 at 7). The day after this incident, Plaintiff was discharged from Dairy Queen. (R. Doc. 1-2 at 1).

Plaintiff also alleges that, as further retaliation for his corporate complaint, Brousard and another manager, Jaime Talcott, intimidated other employees into writing a "false response letter" to the Dairy Queen corporate offices. (R. Doc. 1 at 8). Plaintiff asserts that he was briefly denied unemployment benefits because Dairy Queen or one of its employees misinformed the "unemployment officers" (presumably the Louisiana Workforce Commission) by claiming that Plaintiff resigned voluntarily. (R. Doc. 1 at 8). Plaintiff represents that he then provided evidence of his discharge and has since had his application for unemployment benefits approved. (R. Doc. 1 at 8).

Two of the named defendants – MMPR and ADQ – are now seeking dismissal of the claims brought against them. (R. Docs. 22, 23). The other two named defendants – Dairy Queen, Inc. (IDQ) and Dairy Queen Grill & Chill – have not made appearances. In response to the foregoing motions to dismiss, Plaintiff seeks leave to amend his Complaint. (R. Docs. 32, 34).

## II.    Law and Analysis

### A.    Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Furthermore, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson*, 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Finally, "a *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Systems*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593).

6

"A court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (providing the plaintiff with another opportunity to amend, although the plaintiff had already amended her complaint twice, because she had not done so in response to the district judge's assessment of the sufficiency of her claims).

Under Rule 15(a)(2), after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment...." *See*

7

*Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The "futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (citations omitted).

**B.    Plaintiff's Rule 15(a)(2) Motions to Amend**

Considering the record, it is appropriate to allow Plaintiff to file the Amended Complaint, which effectively dismisses the claims raised against Dairy Queen, Inc. and clarifies that "Dairy Queen Grill & Chill" is not separate business entity, but instead is the alleged trade name under which MMPR was doing business at the time of Plaintif's employment. There is no substantial reason to deny Plaintiff leave to amend the pleadings pursuant to Rule 15(a)(1).

After amendment, however, Plaintiff's claims will remain subject to dismissal. Despite having had the opportunity to amend the pleadings, Plaintiff has failed to state a claim for discrimination or retaliation under Title VII. Accordingly, it is appropriate to dismiss this action, as amended, in its entirety.[2]

---

[2] Generally, where a plaintiff is granted leave to amend while a Rule 12(b)(6) motion is pending, the Clerk of Court will terminate the pending motion to dismiss without prejudice to refile based upon the allegations contained in the amended complaint. *See* LR 12. Here, the substantive reasons for dismissal raised in the pending Rule 12(b)(6) motions to dismiss apply equally to the Amended Complaint. Accordingly, requiring Defendants to file renewed motions to dismiss would result in a waste of judicial resources.

### C.    Defendants' Rule 12(b)(6) Motions to Dismiss

#### 1.    Failure to Exhaust Administrative Remedies (MMPR only)

"It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994); *see* 42 U.S.C. § 20003-5(f)(1). "[A] party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge or it has unfairly prevented the filing of an EEOC charge." *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988). "When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (citations omitted). "One such way courts do so is avoiding 'hypertechnical' readings of charges; for example, when the party named in the EEOC charge is legally identical to the party that is sued, courts permit the suit to go forward." *Id*. The Fifth Circuit, however, does not endorse "a blanket rule that the use of a trade name is always sufficient even when there is no other indication anywhere in the charge that the company violated Title VII[,] . . . which would seriously undermine the purposes of the named party requirement." *Id*.

The Fifth Circuit has recognized two exceptions to Title VII's named-party requirement: (1) the "identity-of-interest" exception and (2) the "actual notice" exception. *Id*. at 482-84. The identity-of-interest exception looks to the following four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and

compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id*. at 482-83 (citing *Glus v. G.C. Murphy Co.*, 562 F. 2d 880 (3d Cir. 1977)). The actual-notice exception holds that the purpose of the named-party requirement is satisfied where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Simbaki*, 767 F. 3d at 483 (citing *Egglston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 89, 905-06 (7th Cir. 1981)).

Here, Plaintiff did not specifically identify MMPR as his employer in the EEOC Charge. MMPR asserts that this requires dismissal for failure to exhaust administrative remedies. In opposing this relief, Plaintiff asserts that the named Defendants were joint employers for the purposes of Title VII based on the "integrated enterprise" doctrine and identity-of-interest exception to the named-party requirement. (*See* R. Doc. 25).

In seeking amendment, Plaintiff seeks to name only two defendants: (1) MMPR Denham Springs Hospitality, LLC Dary Queen/DBA Dairy Queen Grill and Chill and (2) American Dairy Queen Corporation (ADQ). (*See* R. Doc. 32-1 at 3). Plaintiff seeks to clarify that "Dairy Queen Grill & Chill" (which was identified as a "DBA" employer in the EEOC Charge) is not a separate business entity, but instead the trade name under which MMPR was doing business at the time of his employment. (*See* R. Doc. 32-1 at 2-3). Plaintiff also seeks to allege new allegations in support of a finding that MMPR and ADQ formed a single enterprise because MPPR acted as a franchisee of ADQ by using the same public branding:

10

> Plaintiff's EEOC paperwork and the restaurant's public branding identified 'Dairy Queen Grill & Chill' in connection with Plaintiff's worksite. The location used the same 'Dairy Queen' and 'Dairy Queen Grill & Chill' names, logos, uniforms, menus, and national advertising materials associated with American Dairy Queen Corporation, without any clear notice to the public that the site was an independent MMPR franchise. Plaintiff pleads that MMPR and American Dairy Queen Corporation (and related Dairy Queen entities) operated as a single employer, and that American Dairy Queen Corporation and related national entities exercised and/or cloaked MMPR with actual and/or apparent authority over the employment practices at issue.

(R. Doc. 32-1 at 10). MMPR and ADQ filed a joint opposition to Plaintiff's motions to amend the pleading. (R. Doc. 34).

If Plaintiff can establish that MMPR and ADQ are a single employer, then MMPR cannot rely on the unnamed party rule to establish failure to exhaust. *See Sutherland v. Edison Chouest Offshore, Inc.*, No. 19-414, 2020 WL 5436654, at *6 (E.D. La. Sept. 10, 2020) (citing *Selacek v, Hach*, 752 F.2d 333, 336 (8th Cir. 1985)). The Court need not, however, reach the issue of whether Plaintiff can prove that MMPR and ADQ acted as a single employer. It is sufficient to observe that neither MMPR nor ADQ disclaims that it is Plaintiff's employer or otherwise the employer of Plaintiff's supervisors.[3] The Defendants merely assert that Plaintiff failed to *allege* that they are his employers in the pleadings. A liberal reading of Plaintiff's original Complaint (and proposed Amended Complaint) supports a finding that Plaintiff is, in fact, seeking to allege that both MMPR and ADQ were his employers for the purposes of Title VII, he has sufficiently alleged that they are both his employers for the purposes of his Title VII claim.

Plaintiff's Amended Complaint clarifies that Plaintiff is not seeking to sue a separate entity named "Dairy Queen Grill and Chill" but is instead seeking to allege that MMPR is *doing*

---

[3] "The term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983). The four-part test "in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id*. at 404.

*business as* Dairy Queen Grill and Chill. The defendants do not argue in opposition that this allegation is futile. Plaintiff has alleged sufficient facts in support of a finding that the identity-of-interest exception to the unnamed party rule applies to MMPR, which does not dispute that "Dairy Queen Grill and Chill" is the name under which it does business and holds itself out to the public.

Given the current arguments raised by Defendants, dismissal of MMPR based on the named-party requirement is inappropriate based on the pleadings, as amended. That said, Plaintiff's claims remain subject to dismissal with prejudice, as discussed below.

### 2.    Plaintiff's Discrimination Claim

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The U.S. Supreme Court has held that sexual orientation and gender identity are protected under Title VII. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020).

Plaintiff appears to raise a claim of hostile work environment based on his supervisor's questioning of his sexual orientation.[4] Where the claim of harassment is against a supervisor, proving a hostile working environment requires four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or

---

[4] Plaintiff has not raised a viable disparate-treatment claim. "To establish a *prima facie* case of [disparate-treatment] discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Plaintiff does not identify his protected class, much less allege that he was treated less favorably than similarly situated employees who were not members of his protected class.

privilege' of employment." *Lauderdale v. Texas Department of Criminal Justice, Institutional Div.,* 512 F.3d 157, 163 (5th Cir. 2007). To affect a term, condition, or privilege of employment, "sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 (2002). The Court must look to the totality of the circumstances to determine whether the conduct is severe or pervasive enough to establish a hostile work environment. *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.,* 512 F.3d 157, 163 (5th Cir. 2007). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Communications, LLC,* 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)). Finally, the conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir. 1999).

As an initial matter, Defendants are correct that Plaintiff has not specifically identified his sexual orientation and, therefore, has failed to identify the protected class to which he belongs. *See Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 425 (W.D. Tex. 2025) ("Lopez does not state his sexual orientation in his Amended Complaint, meaning he has not identified the protected class to which he belongs and thus cannot plausibly claim discrimination on that basis."). At most, Plaintiff states that he "had been in a heterosexual relationship for 4 years at the time" his supervisor asked him whether he was gay. (*See* R. Doc. 1 at 7; *See* R. Doc. 32-1 at 23). Plaintiff does not clarify in either the Complaint or the proposed Amended Complaint the

nature of his sexual orientation, although it does appears that Plaintiff is claiming to be heterosexual and suffered from mental anguish because his supervisor's questions regarding his sexuality would lead his peers to believe that he was homosexual. (*See* R. Doc. 1 at 7).

But even if Plaintiff had specifically alleged his sexual orientation, the allegations in the pleadings (and EEOC Charge), when viewed in the light most favorable to Plaintiff, cannot plausibly establish a hostile work environment based on "sexual orientation" or "sex stereotype" harassment. In both the pleadings and the EEOC Charge, Plaintiff alleges that Brousard asked him if he was gay in front of other employees. (R. Doc. 1 at 7; R. Doc. 1-2 at 1). Plaintiff alleges that his response to this question was embarrassment, mental anguish, and eventually suicidal thoughts. (R. Doc. 1 at 7). Plaintiff provides no further context to this questioning. There are no allegations that Defendants relied on Plaintiff's gender (or lack of conformity to that gender) in making any employment decisions. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). Absent further allegations, the single, objective question regarding Plaintiff's sexual orientation is insufficient to amount to actionable conduct under Title VII. Even assuming that the nature of this question was to tease or humiliate Plaintiff in front of other coworkers, the isolated event would not fall under the ambit of Title VII. *See Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Plaintiff's other allegations regarding Brousard's workplace statements, if true, would likely create an unpleasant work environment: being called "big back" and "Michael Jackson"; being yelled at "Fu@k ya'll" after delaying passing an order of toast; being told that nobody

liked working with him; and being falsely accused of being "on drugs." (R. Doc. 1 at 7; R. Doc. 1-2 at 1). But none of these additional troublesome and harassing statements are facially associated with sexual orientation and, therefore, do not support Plaintiff's Title VII claim based on sexual orientation discrimination. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace").

For the foregoing reasons, Plaintiff's claims of discrimination based on sexual orientation are subject to dismissal. Plaintiff has had the opportunity to amend the pleadings but has not corrected the deficiencies in his original Complaint with respect to his discrimination claim.

### 3.    Plaintiff's Retaliation Claim

"Title VII prohibits employers from retaliating against employees who oppose an employment practice made unlawful by Title VII." *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 325 (5th Cir. 2017) (per curiam) (citing *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a))). "To establish a prima facie case of retaliation under . . . Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer" reason is actually a pretext for retaliation. . . ." *LeMaire v.*

*Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (citing *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754–55 (5th Cir. 2005)).

"Protected activity is the 'opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 20 (5th Cir. 2020) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). "Title VII protects an employee only from 'retaliation for complaining about the types of discrimination it prohibits." *Id.* (citations omitted). "It has long been the law in this and other circuits that a plaintiff contending that she was retaliated against for proactively reporting employment discrimination need not show that the discrimination rose to the level of a Title VII violation, but must at least show a reasonable belief that it did." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 237 (5th Cir. 2016) (citing *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981)). "Therefore, the relevant question is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Yount v. S & A Restaurant Corp.*, 226 F.3d 641, at *3 (5th Cir. 2000); *see also Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.").

"In a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices." *Allen*, 721 F. App'x at 326 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007). "A vague complaint or general

allegation of unfair treatment, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Allen*, 721 F. App'x at 326 (citing *Davis v. Dall. Indep. Sch. Dist.*, 448 Fed. App'x 485, 493 (5th Cir. 2011) (unpublished) (per curiam) (finding that a statement complaining about a "hostile work environment" did not constitute protected activity under Title VII because it "lacked a racial or gender basis"); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed. App'x 390, 396 (5th Cir. 2008) (unpublished) (per curiam) ("Complaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity"); *Harris-Childs v. Medco Health Sols., Inc.*, 169 Fed. App'x 913, 916 (5th Cir. 2006) (per curiam) (finding that an employee did not engage in protected activity when she complained of harassment but did not mention race or sex)).

Here, Plaintiff alleges that he made a "corporate complaint sent in on October 16th-17th of 2024" and, after the submission of this complaint, he was ultimately discharged by Brousard. (R. Doc. 1 at 7-8). Plaintiff does not allege any specific information regarding the nature of the "corporate complaint," including to whom it was submitted and what information it included that could plausibly be considered discriminatory. At most, Plaintiff states in his EEOC Charge that in October 2024, he "submitted a complaint to the corporate office against Sharrita's bullying, manipulation[,] unprofessionalism and unfair treatment" but "[n]othing was done." (R. Doc. 1-2 at 1). Neither the Complaint nor the EEOC Charge describes in any detail any specific complaint that would put the defendants on notice that Plaintiff had a reasonable belief that he was being discriminated against in violation of Title VII. In short, Plaintiff has failed to allege that the "corporate complaint" was related to any discriminatory practices based on race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Even as amended, Plaintiff has failed to

17

allege any specific facts in support of a finding that he was retaliated against for protected activity under Title VII.

For the foregoing reasons, Plaintiff's claims of retaliation based on sexual orientation are also subject to dismissal. Plaintiff has had the opportunity to amend the pleadings but has not corrected the deficiencies in his original Complaint with respect to his retaliation claim.

### III.    Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motions for Leave to File Amended Complaint Pursuant to Federal Rules of Civil Procedure 15(a) (R. Docs. 32, 33) be **GRANTED**, and Plaintiff's proposed Amended Complaint (R. Doc. 32-1) be deemed to be the operative pleading in this action.

**IT IS FURTHER RECOMMENDED** that Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6) (R. Docs. 22, 23) be **GRANTED**, and Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on June 2, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**